IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Paula K. Butler,

(Chapter 7)

Debtor.

Case No. 11-15497

MEMORANDUM DECISION

This case presents the question of whether a limited partner's interest in real estate can be exempted as being similar to a pension or profitsharing plan under § 522(d)(10)(E) of the Bankruptcy Code. I find that this one can.

The debtor is 42 years old, and has been employed as a cashier at Kwik Trip, Inc. (Kwik Trip) for 16 years. On Bankruptcy Schedule B, she listed a 401(k) retirement plan with Kwik Trip in the amount of $34,597.00, and a "CSI Retirement Savings Plan" (the CSI Plan) at a value of $21,819.00. CSI, short for "Convenience Store Investments," is a limited partnership formed by CSI, Inc., the general partner, and Kwik Trip employees, the limited partners. The purpose of the CSI partnership is to provide Kwik Trip employees a long-term benefit by participating in the ownership of Kwik Trip's real estate assets. The debtor testified that over the course of her employment, she acquired one unit of ownership in CSI each year at a price of $500.00. These units are credited to her Capital Account, as defined in CSI's Amended and Restated Agreement of Limited Partnership (the partnership agreement). By purchasing CSI units, the debtor became a limited partner.

1

The debtor has received an annual "milk check" distribution from CSI since 2007. These distributions appear to come from the earnings the limited partnership receives from its investments in real estate. According to a Summary of Operations dated February 1, 2011, in December 2010, the "milk check" equaled $100.00 for each unit owned.

Profits and losses associated with operating CSI (including gains and losses on sales of property) are allocated among the general and limited partners in proportion to the number of units held. According to a document entitled "Notes to Financial Statements," CSI makes annual cash distributions to limited partners "to permit the partners to pay the income taxes on their share of the Partnership's income." The debtor's 2010 federal tax return reveals a net loss of $6,247.00 from her investment in CSI. Her Schedule K-1 ("Partner's Share of Income, Deductions, Credits, etc.") displays this loss, and also shows a distribution in the amount of $1,080.00. It is unclear from the record whether the "milk check" distribution is included in this distribution amount. A document entitled "Statements of Partners' Equity – Income Tax Basis" indicates that tax distributions and "special" (milk check) distributions are accounted for separately.

The partnership agreement provides guidelines for when a limited partner may redeem her CSI units. A redemption means that the limited partner cashes out her units by having the general partner repurchase them. If a limited partner ceases to be employed by a Kwik Trip entity, other than for reason of a "Qualified Retirement" or "Disability Retirement," CSI, Inc. is obligated to repurchase the CSI units from the limited partner. Partnership Agreement, § 6.10(b). A Qualified Retirement is defined in part as when a person ceases to be actively employed by a Kwik Trip entity, but only if the person was employed on a continuous basis for the twelve years preceding retirement, and has attained the age of 55. Partnership Agreement,

2

§ 1.22B. A Disability Retirement is defined in part as when an employee is unable to perform her duties due to physical or mental illness, disability or incapacity, for a continuous period of one hundred eighty days. Partnership Agreement, § 1.7A. In the case of a Qualified Retirement or Disability Retirement, the limited partner may retain his or her units. However, CSI, Inc. has the right to purchase a limited partner's units ten years after the anniversary of their Qualified or Disability Retirement. Partnership Agreement, § 8.2(c).

When certain requirements are met, CSI, Inc. will allow limited partners a "Hardship Redemption." After receiving a request for a Hardship Redemption, the General Partner has twenty days to determine, in good faith, whether the requirements are satisfied. Partnership Agreement, § 6.9(f)(iii). According to the partnership agreement, a Hardship Redemption means "a redemption of Units which is necessitated by circumstances of severe and unusual financial hardship to the Limited Partner or Unitholder occasioned by illness, casualty, or other unforeseen events not within such person's control." *Id*. The debtor has never requested a Hardship Redemption.

The partnership agreement states that "[a] Limited Partner may withdraw from the Partnership at any time by redemption of his or her Units … in accordance with the procedures set forth in this Section 6.9." Partnership Agreement, § 6.9(a). Like the process for a Hardship Redemption, a limited partner must make a written request to the General Partner, who may accept or reject the request. According to the partnership agreement, "the General Partner may refuse to recognize any request for redemption of Units, for any reason whatsoever…" Partnership Agreement, § 6.9(e). A letter to Kwik Trip employees, dated August 2011, indicates that CSI, Inc. must approve all requests for redemptions, and emphasizes that CSI, Inc. "has a long-standing policy of not granting requests for the redemption of CSI units while an employee

3

continues to be employed by Kwik Trip." According to the letter, "CSI, Inc.'s practice has been and continues to be to grant redemptions only in the case of termination of employment, death and disability."

On her bankruptcy schedules, the debtor claims an exemption in the CSI Plan under § 522(d)(10)(E). The trustee objected, arguing the CSI Plan is not similar to those enumerated in the statute. The trustee further argues that the debtor's interest in the CSI Plan cannot be exempted under § 522(d)(10)(E) because it is not "on account of illness, disability, death, age, or length of service."

Bankruptcy Rule 4003(c) places the burden of proving an exemption was improperly claimed on the objecting party. *In re LaLonde*, 431 B.R. 199, 209 (Bankr. W.D. Wis. 2010). Exemptions are to be liberally construed in favor of the debtor. *Id.* (citing *In re Geise*, 992 F.2d 651 (7th Cir. 1993)).

11 U.S.C. § 522(d)(10)(E) states that the debtor may exempt:

> "The debtor's right to receive-- ... a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless –
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
>
> (ii) such payment is on account of age or length of service; and
>
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986."

The limitation described in (i), (ii), and (iii) does not apply in this case because the CSI Plan was not established by an insider. If an insider-employer had established the plan, and the plan

4

payments were on account of age or length of service, the plan would have to qualify under the enumerated sections of the Internal Revenue Code. 11 U.S.C. § 522(d)(10)(E)(i)-(iii); *see also In re Michael*, 339 B.R. 798, 804 (Bankr. N.D. Ga. 2005). However, if (i) or (ii) does not apply, the CSI Plan need not qualify under the stated provisions of the Internal Revenue Code.

Under the relevant part of 11 U.S.C. § 101(31), an "insider" is:

> (A) if the debtor is an individual—
>
> (i) relative of the debtor or of a general partner of the debtor;
>
> (ii) partnership in which the debtor is a general partner;
>
> (iii) general partner of the debtor; or
>
> (iv) corporation of which the debtor is a director, officer, or person in control…

The definition of insider is not an exhaustive list; bankruptcy courts have expanded it to include positions analogous to those enumerated. *In re Longview Aluminum, L.L.C.*, 657 F.3d 507, 509-10 (7th Cir. 2011). The insider analysis is a case-by-case decision based on the totality of the circumstances, and bankruptcy courts have used many different factors in their determinations. *Id.* at 509. One approach "focuses on the similarity of the alleged insider's position to the enumerated statutory categories, while another approach focuses on the alleged insider's control of the debtor." *Id.* The term insider can also encompass anyone with a "sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." *Id.* (citing *In re Krehl*, 86 F.3d 737, 741-42 (7th Cir. 1996)). Courts look to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length. *Id.*; *see also In re Krehl*, 86 F.3d at 742.

The CSI Plan was formed by CSI, Inc. and limited partners like the debtor. CSI, Inc. does not employ the debtor. Even if it did, CSI, Inc. is not a general partner of the debtor – it is a general partner of the limited partnership, CSI. Therefore, CSI, Inc. is not a statutory insider. Even assuming CSI, Inc. formed the CSI Plan under the auspices of Kwik Trip, Kwik Trip is not the debtor's statutory insider, either. And the debtor does not have a sufficiently close relationship with Kwik Trip or CSI, Inc. to render either entity her insider. Kwik Trip has convenience stores in more than 350 locations across the Midwest, and employs thousands of "co-workers" at these locations, consisting of a mixture of full-time and part-time employees.[1] The debtor has no duties beyond that of a cashier, and all transactions occurring between her and Kwik Trip are at arm's length. The same is true for her transactions with CSI, Inc. Since § 522(d)(10)(E)(i) does not apply, an examination of § 522(d)(10)(E)(ii) is unnecessary, and the CSI Plan does not need to conform to the enumerated Internal Revenue Code provisions. But the debtor's right to payment under the CSI Plan must still meet the elements of the statute to qualify for the exemption.

According to the United States Supreme Court, the debtor's right to receive payment under the CSI Plan must meet three requirements to be exempted under this provision: "(1) [t]he right to receive payment must be from 'a stock bonus, pension, profitsharing, annuity, or similar plan or contract'; (2) the right to receive payment must be 'on account of illness, disability, death, age, or length of service'; and (3) even then, the right to receive payment may be exempted only

---

[1] Wikipedia.org, *Kwik Trip*, http://en.wikipedia.org/wiki/Kwik_Trip (last visited May 11, 2012); Kwiktrip.com, *Kwik Trip, Inc.*, http://www.kwiktrip.com/AboutUs/TheCompany/KwikTripInc.aspx (last visited May 11, 2012); *see also* Noam Cohen, *Courts Turn to Wikipedia, but Selectively*, N.Y. Times, Jan. 29, 2007, at C3 (noting Judge Posner stated that "Wikipedia is a terrific resource," but "[i]t wouldn't be right to use it in a critical issue.").

'to the extent' that it is 'reasonably necessary [to] support' the accountholder or his dependents." *Rousey v. Jacoway*, 544 U.S. 320, 325-26 (2005).

In order to be a "similar plan or contract" under § 522(d)(10)(E), the CSI Plan must provide income that substitutes for wages earned as salary or hourly compensation. *Rousey*, 544 U.S. at 331. A plan that merely "operates as a savings account" is not sufficient. *Id.* at 329. Judge Utschig noted the legislative history of § 522(d)(10)(E), which states that "[p]aragraph (10) exempts certain benefits that are akin to future earnings of the debtor." *In re Cilek*, 115 B.R. 974, 988 (Bankr. W.D. Wis. 1990) (citing H.R.Rep. 595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, p. 6318)). "Akin to future earnings" means the funds were "designed to function as a wage substitute at some future period and, during that future period, to 'support the basic requirements of life for [the debtors] and their families ...'" *Id.* (quoting *Kokoszka v. Belford*, 417 U.S. 642 (1974)).

A "similar plan" does not have to be a retirement plan to qualify under § 522(d)(10)(E). The Supreme Court observed that all plans listed in the statute provide income that substitutes for wages, but they are different in other respects. *Rousey*, 544 U.S. at 331. For example, "employers establish and contribute to stock bonus, profitsharing, and pension plans or contracts, whereas an individual can establish and contribute to an annuity on terms and conditions he selects." *Id.* Pension plans and annuities provide deferred payment, but profitsharing or stock bonus plans may or may not provide deferred payment. *Id.* Further, while a pension provides retirement income, none of the other plans necessarily provide retirement income. *Id.*

By the terms of the partnership agreement, CSI is obligated to redeem a partner's units upon termination of employment. CSI has a policy of granting other redemptions only in the case of

7

termination of employment, death and disability. In the case of a Qualified Retirement or Disability Retirement, a limited partner is generally able to redeem her units or retain them. These terms fit with the purpose described in the August 2011 letter, that Convenience Store Investments is a long-term benefit similar to a retirement savings plan for the employees of Kwik Trip. The terms of the agreement and the general policy of the partnership indicate that the debtor's right to redeem her CSI units functions as a substitute for wages.

The occasional "milk check" distribution makes this plan seem less like a substitute for wage income. But milk check distributions are not guaranteed. The CSI Plan's stated purpose is to provide a long-term benefit through the investment of real estate. The debtor has also received short-term benefits that are common to conventional real estate investments such as passed-through losses, presumably from depreciation, that reduce her current income taxes. However, the structure of the CSI Plan makes it difficult for the debtor to redeem her units unless she ceases to work, and that makes it look like a substitute for wages in the future.

The CSI Plan payments also meet the second element of the statute, as redemption of units can occur "on account of" disability, death, or illness. According to the Supreme Court, "on account of" in § 522(d)(10)(E) requires that the right to receive payment be "because of" illness, disability, death, age, or length of service. *Rousey*, 544 U.S. at 326-27.

Under the terms of the partnership agreement, the debtor may redeem her CSI units in cases of "severe and unusual financial hardship to the Limited Partner or Unitholder occasioned by illness, casualty, or other unforeseen events not within such person's control." "Illness" is an enumerated condition in § 522(d)(10)(E). CSI, Inc. has a policy of granting redemption in cases of death and disability, which are also enumerated conditions in the statute, and denying them in

8

other circumstances. There is, of course, the possibility that the debtor could take advantage of CSI's policy of redeeming units of a terminated Kwik Trip employee, by quitting or getting fired. But, while such a redemption would not be "on account of" disability, death or illness, it would be a fairly drastic step unlikely to be in the debtor's interest. That possibility does not alter the character of the plan, which otherwise satisfies this element of the analysis.

The final element requires that the exempted fund is reasonably necessary for the support of the debtor. A determination that funds are reasonably necessary for support under § 522(d)(10)(E) is a factual determination. *Matter of Kochell*, 732 F.2d 564, 566 (7th Cir. 1984). In *Kochell*, the Seventh Circuit Court of Appeals cited *In re Taff*, 10 B.R. 101 (Bankr. D. Conn. 1981), for factors a court should consider in determining whether funds are reasonably necessary for support under 11 U.S.C. § 522(d)(10)(E). *Id*. Thus, in this circuit, "the 'reasonably necessary' standard requires that the court take into account other income and exempt property of the debtor, present and anticipated ... and that the appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs, not related to his former status in society or the lifestyle to which he is accustomed but taking into account the special needs that a retired and elderly debtor may claim." *In re Cilek*, 115 B.R. at 990 (citing *Taff*, 10 B.R. at 107). Other courts have elaborated on *Taff* to include the debtor's age, present employment, future employment prospects and general health. *Id*. The Court of Appeals cited to relevant legislative history:

> "...Section 6 of the Uniform Exemptions Act defined the phrase 'property to the extent reasonably necessary for the support of [the debtor] and his dependents' as 'property required to meet the present and anticipated needs of the individual and his dependents as determined ... after consideration of the individual's responsibilities and all of the present and anticipated property and income of the individual, including that which is exempt.'"

*Matter of Kochell*, 732 F.2d at 565.

9

At the hearing, neither party addressed whether the CSI Plan payments were reasonably necessary for the debtor's support. The debtor is 42 years old. According the debtor's 2010 Federal Tax Return, her Income (before any adjustments) totaled $15,621.00. She reported $65,196.27 in total assets and $44,546.91 in total liabilities on her bankruptcy schedules, all of which is unsecured debt. She owns no real property. As of the petition date, the value of her 401(k) retirement plan is $34,597.00. The value of her CSI Plan, as of petition date, is $21,819.00. Taken together, the total value of these two plans is $56,416.00. It cannot be determined what these plans will be worth when she ceases to work. However, whether she continues to work the next 20 years or whether she stops working next year, the combined value of these two plans does not appear to exceed the debtor's needs. The trustee has not proved that the payments under the CSI Plan are not reasonably necessary for the support of the debtor and any dependent of the debtor.

While this plan does provide some current benefits to the debtor, it also has the earmarks of a traditional retirement plan. It operates as one intended to provide income when the debtor is retired or is not able to work, for reasons that include those contemplated by § 522(d)(10)(E).

For these reasons, the trustee's objection is overruled, and the exemption is allowed. It will be so ordered.

Dated: May 29, 2012

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE